UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Decker, Malveaux and Senior Judge Annunziata

PATRICK O. GANNON

v.      Record No. 1083-18-3

CITY OF ROANOKE DEPARTMENT
  OF SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
DECEMBER 11, 2018

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
J. Christopher Clemens, Judge

(L. Brad Braford, on brief), for appellant.  Appellant submitting on
brief.

(Daniel J. Callaghan, City Attorney; Heather P. Ferguson, Assistant
City Attorney; Robin Dearing, Guardian *ad litem* for the minor child,
on brief), for appellee.  Appellee and Guardian *ad litem* submitting
on brief.


Patrick O. Gannon (father) appeals an order terminating his parental rights and approving

the foster care goal of adoption.  Father argues that the circuit court erred in terminating his parental

rights because "there was insufficient evidence to terminate [his] parental rights pursuant to [Code

§ 16.1-283(B) and (C)(2)] . . . and to establish the goal of adoption."  Upon reviewing the record

and briefs of the parties, we conclude that the circuit court did not err.  Accordingly, we affirm

the decision of the circuit court.

BACKGROUND

"On appeal, 'we view the evidence and all reasonable inferences in the light most

favorable to the prevailing party below, in this case the Department.'"  Farrell v. Warren Cty.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Dep't of Soc. Servs., 59 Va. App. 375, 386, 719 S.E.2d 329, 334 (2012) (quoting Jenkins v.

Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1180, 409 S.E.2d 16, 18 (1991)).

Father and Kelley Gannon (mother) are married and the biological parents to S.G., who is

the subject of this appeal.[1]  S.G. was born with numerous medical conditions, including a

"smooth brain."  Due to his medical situation, S.G. had to remain hospitalized for several months

after his birth.  He required a g-tube and oxygen machine.  Before his discharge in March 2017,

the hospital staff tried to teach mother and father how S.G.'s equipment worked and what he

needed.  Despite the hospital's recommendation that mother and father "room in" with S.G. for

the weekend immediately before his discharge to learn how to operate S.G.'s equipment, neither

parent did so; however, father came for two "care times."  On the morning of S.G.'s discharge

from the hospital, mother reported that they had financial problems and faced the possibility of

having their electricity turned off and eviction.  Both parents admitted that they were not ready

for S.G. to come home, and no other appropriate caregivers were identified.  Consequently, the

City of Roanoke Department of Social Services (the Department) filed a petition for an

emergency removal of the child, which the City of Roanoke Juvenile and Domestic Relations

District Court (the JDR court) granted on March 7, 2017.  The JDR court adjudicated S.G. as an

abused or neglected child and entered a dispositional order on April 27, 2017.

While S.G. was in foster care, the Department provided numerous services to mother and

father and informed them that they had to demonstrate that they fully understood S.G.'s needs

and could care for him before S.G. could return home.  The Department further advised that

mother and father had to be financially stable and current on their bills.  The Department also

referred mother and father to a parenting class and couple's counseling.  The Department was

---

[1] Mother and father have an older child, who is not the subject of this appeal and is in the care of the maternal grandfather and his wife.

very concerned about mother's substance abuse issues and referred her to random drug screens; however, mother abused an over-the-counter drug that the drug screens could not detect. The Department referred mother to several substance abuse treatment programs, but she never completed the programs.[2]

In addition, the Department required mother and father to participate in a psychological and parental capacity evaluation and follow through with all of the recommendations of the evaluator. On June 28, 2017, father participated in the evaluation with Dr. Klaire Mundy.[3] Dr. Mundy opined that while father "possesses the intellectual ability necessary to take care of his high-risk infant son," he displayed a "lack of willingness to be open to corrective criticism," and "he can't make rational, reasonable decisions." Dr. Mundy testified that father "demonstrated really poor insight and judgment into the problems that were occurring as far as . . . his son's medical issues and just his knowledge and awareness of the impact of substance abuse and recovery and addiction in general." Dr. Mundy expressed concern that since father "works a lot," he would have to depend on mother to be the primary caretaker, but mother "has too much trouble with substance abuse," which would cause additional stress in the household. Dr. Mundy recommended that father be referred to a psychiatrist for possible medication, participate in individual therapy and couple's therapy, and attend an anger management class. Although father participated in an anger management class, he did not complete Dr. Mundy's other recommendations.

The Department also arranged for father to visit with S.G., which he regularly attended as long as his work schedule permitted. During the visits, mother and father had opportunities to

---

[2] Mother testified that as of April 1, 2018, she had been participating in a substance abuse program at Roanoke Comprehensive Treatment Center and had started taking suboxone.

[3] Dr. Mundy evaluated mother on August 21, 2017.

feed S.G., but it usually took both of them to administer his g-tube feedings. Mother and father learned about S.G.'s equipment and the importance of monitoring his oxygen levels. The Department expressed concern, however, about father and mother's ability to care for S.G. because they had a "laid back attitude" toward S.G.'s oxygen levels and disregarded the alarm when the oxygen levels got too low.

The Department also required father and mother to have appropriate housing for S.G. On July 20, 2017, father and mother were served with an eviction notice and had to live with father's mother temporarily. They subsequently moved to an efficiency apartment, which they told the Department was not suitable for S.G.'s needs. The Department also was concerned that an efficiency would not be large enough to store S.G.'s equipment, including a wheelchair, stroller, stander, bath seat, "a special bed," fabulyzer, oxygen concentrator, and many medical supplies.

Since father and mother had not remedied their situation, the Department filed petitions to terminate their parental rights to S.G. On February 9, 2018, the JDR court terminated father's parental rights and approved the foster care goal of adoption. Father appealed to the circuit court.[4]

On June 11, 2018, the parties appeared before the circuit court. The Department presented evidence about S.G.'s significant medical needs. At the time of the circuit court hearing, S.G. still needed a g-tube for feedings, but he had begun to tolerate "smooth table food." S.G. no longer had to wear a cranial helmet, but was diagnosed with scoliosis, which had to be monitored. Although S.G. was approximately eighteen months old at the time of the circuit court hearing, his mental development was equivalent to a six month old, and his fine motor and gross motor developments were equivalent to a nine month old. The medical specialists predicted that

---

[4] The JDR court also terminated mother's parental rights, and she appealed to the circuit court.

- 4 -

S.G. would have an intellectual disability, developmental delays, and autism. S.G. also was diagnosed with a genetic deletion. He needed oxygen, especially while he was sleeping or active, but he did not need it full-time. S.G. participated in occupational therapy, speech therapy, physical therapy, and he was under the care of a dentist, cardiologist, pulmonologist, orthopedist, neurologist, ophthalmologist, geneticist, "GI nutrition[ist]," and a pediatrician. The social worker testified that S.G. was doing "really well" in his foster home and "becoming more engaging with his environment."

Father testified that after S.G.'s birth, he and mother received virtually no training from the hospital as to how to care for S.G. He explained that he and mother did not "room in" with S.G. for the weekend before S.G.'s hospital discharge because he and mother had upper respiratory infections and were told that they could not "be on the Unit anytime . . . with an illness like that because it could kill a baby." The circuit court heard evidence that father previously worked as an emergency services provider with an ambulance service, and father was confident that he could work S.G.'s g-tube and medical equipment.

When asked about counseling, father admitted that he had not started individual counseling, but was on a six to eight month waiting list for services. He thought that he had to participate in individual counseling before engaging in couple's counseling. He also was under the impression that the Department was more concerned about housing, so he placed more emphasis on securing better housing, as opposed to addressing the counseling requirements. However, at the time of the circuit court hearing, he and mother still lived in the efficiency apartment. Father further stated that he worked five days per week from 7:00 a.m. until approximately 5:00 or 5:30 p.m., and while he was working, his plan was for family members, a child care provider, or a nurse to care for S.G. Father explained that if he had to remove mother

from the home because of her substance abuse, he would do so, but as long as she was in treatment, they would continue to live together.

After hearing all of the evidence and argument, the circuit court found that it was in S.G.'s best interest to terminate father's parental rights pursuant to Code § 16.1-283(B) and (C)(2) and approve the goal of adoption.[5]  This appeal followed.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'"  Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558, 811 S.E.2d 835, 840-41 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)).  "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it."  Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190, 717 S.E.2d 811, 814 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)).

Father argues that the evidence was insufficient to prove that it was in S.G.'s best interest to terminate father's parental rights under Code § 16.1-283(B) and (C)(2) and approve the goal of adoption.  He emphasizes that he consistently visited with S.G. and demonstrated an understanding of S.G.'s medical equipment.  He also completed the psychological and parental capacity evaluation and the anger management class.  However, father did not complete the individual counseling or couple's counseling.  He testified that he was on a waiting list for individual counseling.

_____

[5] The circuit court also terminated mother's parental rights to S.G.

Code § 16.1-283(C)(2) states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005).

The Department presented evidence that father did not have appropriate housing for S.G. and all of his medical equipment. As father admitted, he had not followed through with the Department's requirements for counseling, even though the Department listed couple's counseling as a requirement in the foster care plan dated April 12, 2017, prepared fourteen months before the circuit court hearing. In that same foster care plan, the Department required father to participate in a psychological and parental capacity evaluation and directed him to follow through with all recommendations. Father completed the evaluation in June 2017. As part of father's evaluation, Dr. Mundy recommended individual counseling, couple's counseling, and a psychiatric referral for possible medication. One year later, father still had not complied with those recommendations.

The Department presented evidence that S.G. was improving in foster care, but still had numerous medical issues. S.G. had been in foster care for approximately fifteen months, but father had not remedied the conditions that led to S.G. remaining in foster care. The circuit court found that the evidence was "overwhelming" that S.G. was "better off without you all [mother and father] right now." The circuit court explained that it had to consider the current

circumstances and could not "look at what might happen a year and a half from now, or a one year time in drug treatment from now, or if you all had hired a nurse, or if you had made arrangements for somebody to come and . . . explain what you would have done." The evidence proved that despite the Department's efforts, father was not prepared to care for S.G. at the time of the circuit court hearing. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 322, 746 S.E.2d 509, 522 (2013) (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990)). Accordingly, the circuit court did not err in terminating father's parental rights under Code § 16.1-283(C)(2).[6]

"When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds." Kilby v. Culpeper Cty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1, 684 S.E.2d 219, 220 n.1 (2009); see also Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 8, 614 S.E.2d 656, 659 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Therefore, we will not consider whether the circuit court erred in terminating father's parental rights pursuant to Code § 16.1-283(B).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

Affirmed.

---

[6] With respect to father's challenge of the foster care goal of adoption, "[o]ur decision to affirm the termination order necessarily subsumes this aspect of his appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." Toms, 46 Va. App. at 265 n.3, 616 S.E.2d at 769 n.3.